IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAKIEM ANDREWS, | : | |
| *Plaintiff*, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 16-1872 |
| JIM KENNEY, et al., | : | |
| *Defendants*. | : | |

PRATTER, J.                                                                     JUNE 14, 2017

## MEMORANDUM

Hakiem Andrews has sued Philadelphia Mayor James Kenney, former Philadelphia Mayor Michael Nutter, Philadelphia Prison Commissioner Blanche Carney, former Philadelphia Prison Commissioner Michael Resnick, and Warden Gerald May of the Curran-Fromhold Correctional Facility ("CFCF") for alleged violations of his constitutional rights arising out of the alleged practice of housing inmates subject to Philadelphia County detention in overcrowded cells. Defendants move to dismiss Mr. Andrews's Amended Complaint on the basis that he has failed to assert factual allegations that could plausibly support a finding of § 1983 liability against any individual defendant. Because the Court finds that Mr. Andrews's Amended Complaint contains sufficient factual allegations as to Warden May, the Defendants' now pending motion to dismiss is granted in part and denied in part as outlined below.

## I. ALLEGATIONS IN THE AMENDED COMPLAINT[1]

Mr. Andrews alleges that he was housed in three- and four-person cells as a pretrial detainee at the Curran-Fromhold Correctional Facility, even though the jail cells were designed and built to house only two inmates each. Mr. Andrews alleges that as a consequence of being housed in an overcrowded cell he was forced to sleep in a make-shift bed on the floor next to the toilet, which resulted in urine and fecal matter getting splashed onto his bedsheets. Mr. Andrews seeks damages for each day he was housed in an overcrowded cell.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes testing the legal sufficiency of a complaint. Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

---

[1] This Court dismissed Mr. Andrews's original Complaint because he failed to allege that the named defendants were personally involved in the deprivations of his constitutional rights. Mr. Andrews was given leave to amend his Complaint. Mr. Andrews subsequently filed a document, which the Court construes as his Amended Complaint, containing additional factual allegations. *See* Doc. No. 14. In the cover page to this document, Mr. Andrews wrote, "Can you please amended [sic] this 3 page file with my civil action No. 16-1872. This file gos [sic] with my complaint." Doc. No. 14. Mindful of the obligation to liberally construe the pleadings of *pro se* litigants, *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), the Court will consider the allegations contained in Mr. Andrews's original Complaint in addition to the factual allegations contained in Mr. Andrews's Amended Complaint in deciding the Defendants' motion to dismiss. Accordingly, when the court refers to Mr. Andrews's Amended Complaint, the Court refers to the factual allegations contained both in his original Complaint and his Amended Complaint.

To not prejudice the Defendants, the Court will also consider arguments set forth in both the Defendants' first motion to dismiss and the Defendants' second motion to dismiss.

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

To decide a Rule 12(b)(6) motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court may also consider documents that are "integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). Likewise, the Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party, here, Mr. Andrews. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

## III. DISCUSSION

Section 1983 affords individuals with a remedy when state actors violate their federally protected rights. *See Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). In order to make out a cognizable § 1983 claim, a plaintiff must establish "that a person acting under color of law deprived him of a federal right." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). In

3

order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two general ways for a plaintiff to establish that a supervisor-defendant was personally involved in the acts taken by his or her subordinates. A plaintiff must show that the supervisor-defendant (i) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or (ii) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (quotation marks and citations omitted), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

### A. Deprivation of a Federal Right

While Mr. Andrews does not cite a specific constitutional right the Defendants' actions allegedly violated, the Court will construe Mr. Andrews's allegations as a "conditions of confinement claim" analyzed pursuant to the Fourteenth Amendment's Due Process Clause.

The Fourteenth Amendment's Due Process Clause protects pretrial detainees from being subjected to punishment "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Hubbard v. Taylor*, 399 F.3d 150, 166-67 (3d Cir. 2005) ("*Hubbard I*"). In order for a condition of confinement to constitute punishment the condition of confinement must (i) be intended to punish, or (ii) not be rationally related to a legitimate government purpose. *Bell*, 441 U.S. at 538-39; *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*"). Mr. Andrews does not appear to claim that the alleged triple-celling was a result of an intended punishment. Accordingly, the relevant question

4

is whether the conditions of confinement alleged in the Amended Complaint are rationally related to the Defendants' legitimate interest in managing overcrowded prison facilities. *Hubbard II*, 538 F.3d at 233. Courts must consider the totality of the conditions when assessing whether or not particular conditions of confinement are unconstitutional. *Id.* at 233. Doing so requires an inquiry into "whether [the] conditions cause inmates to endure such genuine privations and hardship over an extended period of time[] that the adverse conditions become excessive in relation to the purposes assigned to them." *Id.* (internal quotation marks and citation omitted).

The allegations contained in Mr. Andrews's Amended Complaint with regard to the unsanitary, unsafe, and inadequate conditions he is alleged to have endured as a result of the triple-celling are sufficient, at this stage, to plausibly plead a constitutional violation. For example, Mr. Andrews alleges (i) he was forced to sleep in a "boat"[2] on the floor of his cell next to a toilet, causing "urine an[d] fecal matter [to] splash on [his] bed sheets," Compl. p. 3 (Doc. No. 5), (ii) he had no room to move around in his cell because of the number of inmates, forcing him to stay in his bed "most of the day," Compl. p. 3, (iii) his limited ability to move around his cell caused him to repeatedly hit his leg on the "boat" resulting in a swollen leg, Compl. p. 3, (iv) the overcrowding "prevent[ed] him from showering on a daily basis," Compl. p. 11, and (v) "[t]he operable showers are covered with black mold . . . and the cells are infested with insects and rodents," Compl. p. 11. Taking Mr. Andrews's allegations as true, as the Court must on this motion to dismiss, it is plausible that the conditions of Mr. Andrews's confinement were "excessive in relation to the purposes assigned them, and thus [were] not rationally related to the legitimate purpose of managing an overcrowded prison." *Shaw v. Nutter*, No. 15-1209, 2017

---

[2] A "boat" is a plastic bed that prisons place on the floor of a cell in order to house more prisoners in a given cell than the cell was designed to hold.

WL 895584, at *3 (E.D. Pa. Mar. 6, 2017) (quotation marks omitted); *see also Peele v. Delaney*, No. 12-4877, 2017 WL 467347, at *2 (E.D. Pa. Feb. 3, 2017).[3] Accordingly, the Court finds that Mr. Andrews has adequately pleaded a plausible violation of his Fourteenth Amendment rights.

### B. Personal Involvement of Mayor James Kenney, Former Mayor Michael Nutter, Prison Commissioner Blanche Carney, and Former Prison Commissioner Michael Resnick

Mr. Andrews's Amended Complaint does not contain allegations that could plausibly support a finding that Defendants Kenney, Nutter, Carney, or Resnick (i) maintained a policy, with deliberate indifference to its consequences, that resulted in the alleged violation of Mr. Andrews's constitutional rights, or (ii) directly participated in the alleged deprivation of Mr. Andrews's constitutional rights.

#### 1. Deliberate Indifference Theory of § 1983 Supervisory Liability

The Court will infer from Mr. Andrews's Amended Complaint an allegation that Defendants Kenney, Nutter, Carney, and Resnick were responsible for establishing and/or maintaining CFCF's triple-celling policy. *See* Am. Compl. p. 3 ("The Commissioner has an obligation to fine [sic] a way to fix the overcrowding . . . ."); *see also id.* ("When the mayor [is informed of overcrowding in the prisons,] it is time for him to take action."). Alleging that a supervisory defendant was responsible for establishing or maintaining the policy or custom that resulted in the alleged constitutional deprivation is not, however, sufficient to establish supervisory liability. Rather, to survive a motion to dismiss, a plaintiff must also put forth factual allegations to plausibly support a finding that the supervisory defendant acted with deliberate indifference. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)

---

[3] The Court notes that the Defendants' briefs in opposition do not argue that Mr. Andrews has failed to allege a constitutional violation. Defendants only argue that Mr. Andrews has not pleaded sufficient factual allegations to support a finding of liability against any of the named defendants.

(explaining that supervisory liability requires a plaintiff to "identify specific acts or omissions of the supervisor that evidence deliberate indifference").

To establish that a supervisory defendant acted with deliberate indifference, a plaintiff must establish that "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Brown*, 269 F.3d at 216; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Here, Mr. Andrews has done nothing more than make conclusory allegations that Defendants Kenney, Nutter, Carney, and Resnick were aware of the triple-celling policy and its effects on the CFCF prison population. At most, Mr. Andrews alleges that Defendants Kenney, Nutter, Carney, and Resnick should have known about the conditions of confinement that resulted from the overcrowding problems at CFCF because of their positions in the prison "chain of command." Pleading constructive knowledge based on a defendant's supervisory position, however, is not sufficient to plead awareness of a subordinate's unconstitutional conduct. *McQueen v. Phila. Housing Auth.*, No. 02-8941, 2003 WL 22533726, at * 3 (E.D. Pa. Sept. 26, 2003). Because Mr. Andrews has not pleaded facts that could plausibly support a finding that Defendants Kenney, Nutter, Carney, or Resnick were aware that the triple-celling policy was creating an unreasonable risk of injury, let alone that they were aware of the risk and acted with deliberate indifference to that risk, the Court finds that Mr. Andrews's claim against these defendants on a deliberate indifference theory fails. *See Shaw*, 2017 WL 895584, at *5 ("The amended complaint merely states the Defendants' job titles and that they either (1) are

responsible for managing or overseeing operations at CFCF or (2) promulgated policies governing the PPS. Without additional factual support, these conclusory allegations are insufficient to allege that Defendants were deliberately indifferent to the harm caused by a policy, practice, or custom.").

2. <u>Participation Theory of § 1983 Supervisory Liability</u>

Mr. Andrews's Amended Complaint, even when read with all possible inferences in his favor, does not contain any factual allegations that could plausibly support a finding that Defendants Kenney, Nutter, Carney, or Resnick personally participated in the alleged deprivations of Mr. Andrews's constitutional rights. As discussed above, Mr. Andrews's allegations that these defendants should have known of the conditions of confinements he was forced to endure are not sufficient to establish supervisory liability. Accordingly, the Court will dismiss all claims asserted against Defendants Kenney, Nutter, Carney, and Resnick.

**C. Personal Involvement of Warden Gerald May**

Mr. Andrews's Amended Complaint sets forth factual allegations that could plausibly support a finding that Warden May was personally involved in the alleged deprivations of Mr. Andrews's constitutional rights. A plaintiff can establish personal participation on the part of a supervisory defendant by demonstrating that the supervisory defendant had knowledge of, and acquiesced in, the unconstitutional conduct of his or her subordinates. *Barkes*, 766 F.3d at 316; *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). A plaintiff adequately pleads acquiescence by putting forth factual allegations that a supervisory defendant had "both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor." *Gannaway v. Prime Care Med., Inc.*, 150 F.

8

Supp. 3d 511, 546 (E.D. Pa. 2015). A plaintiff's allegations of actual knowledge and acquiescence "must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Here, Mr. Andrews alleges that Warden May "is hands on with running CFCF prison on a daily bases [sic]," "is in charge of safely securing all inmates in the prison," and "routinely makes tours throughout [CFCF,] seeing with his own eyes, a third man with a mat on the floor in the cell." Am. Compl. pp. 2-3. The Court will also infer from Mr. Andrews's Amended Complaint an allegation that Warden May, by virtue of "running CFCF prison on a daily bas[is]," was aware of the "daily counts of every inmate" showing that CFCF's inmate population exceeded its capacity. *See* Am. Compl. pp. 2-3. Last, Mr. Andrews alleges that the inadequate conditions of confinement have "been around for years, and the parties involved have done nothing." Am. Compl. p. 4. Taking these allegations as true, as the Court must on this motion to dismiss, the Court finds that Mr. Andrews has adequately pleaded that Warden May had knowledge of, and acquiesced in, the triple-celling policy instituted at CFCF and the resulting conditions of confinement that Mr. Andrews alleges violated his constitutional rights. *See Peele*, 2017 WL 467347, at *3-*4 (finding allegation that warden received daily reports of the number of inmates housed in prison cells sufficient to plead knowledge and acquiescence); *Shaw*, 2017 WL 895584, at *4 (finding allegation that prison warden made weekly tours of the prison and spoke to plaintiff concerning plaintiff's complaint sufficient to plead knowledge and acquiescence).

## IV.     CONCLUSION

For the forgoing reasons, the Defendants' now pending motion to dismiss is granted in part and denied in part.

\*     \*     \*

An appropriate order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge