IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAKIEM ANDREWS, | : | |
| *Plaintiff, Pro Se* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GERALD MAY, | : | No. 16-1872 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                                                    DECEMBER 18, 2019

Hakiem Andrews claims that Gerald May, Warden of the Curran-Fromhold Correctional Facility ("CFCF"), violated his constitutional rights by subjecting him to unsanitary, unsafe, and inadequate prison conditions—namely, housing three inmates in a cell built for two, a practice also known as "triple-celling." In addition to this § 1983 prison conditions claim, Mr. Andrews asserts a claim of civil contempt against Warden May, alleging violations of a settlement agreement between a former class of prisoners challenging the constitutionality of triple-celling and the City of Philadelphia.

Warden May moves for summary judgment and Mr. Andrews opposes. For the reasons below, the Court grants Warden May's motion for summary judgment on the § 1983 claim but denies the motion on the civil contempt claim.

### BACKGROUND

Mr. Andrews was an inmate at CFCF from August 2015 until May 2017, when he was released into state custody. *See* Mot. for Summ. J. Ex. C (Doc. No. 59-4). Mr. Andrews alleges that throughout his time at CFCF, he spent at least 264 days in a triple cell. *See* Resp. to Mot. for Summ. J. Ex. H (Doc. No. 60). While subject to this triple-celling, Mr. Andrews slept on a

1

"boat"—a type of plastic bed—next to the cell's toilet, where he was allegedly exposed to urine and fecal matter. *See* Compl. at 10 (Doc. No. 5).

CFCF maintains a grievance procedure through which inmates can seek "administrative resolution of complaints arising from [CFCF's] administration or operation." Mot. for Summ. J. Ex. A at 1 (Doc. No. 59-2). The CFCF grievance procedure entitles inmates to file grievances and appeal any responses thereto. *See generally* Mot. for Summ. J. Ex. A (Doc. No. 59-2).

Mr. Andrews claims that he filed his first grievance complaining of triple-celling on March 27, 2016. *See* Resp. to Mot. for Summ. J. Ex. A (Doc. No. 60). In response to that grievance, Mr. Andrews allegedly had an oral hearing with two prison officials, Lieutenant Lynn and Sergeant Roney, during which "they basically just told [him] to go back to [his] block and deal with it." *See* Mot. for Summ. J. Ex. F 22:3–12 (Doc. No. 59-7).

Mr. Andrews then turned to the judicial system for relief. After applying to proceed *in forma pauperis* in April 2016, Mr. Andrews filed his complaint on June 8, 2016. *See* Compl. (Doc. No. 5). Therein he asserted claims for violations of his constitutional rights against the Philadelphia Mayor James Kenney, former Mayor Michael Nutter, Prison Commissioner Blanche Carney, former Prison Commissioner Michael Resnick, and CFCF Warden Gerald May. *See id.*

On January 12, 2017, the Court granted the defendants' first motion to dismiss without prejudice, finding Mr. Andrews had failed to allege the defendants were personally involved in the deprivations of his constitutional rights. *See* Jan. 12, 2017 Order (Doc. No. 13). Mr. Andrews filed an amended complaint in February 2017, which was met with a subsequent motion to dismiss. *See* Am. Compl. (Doc. No. 14); Mot. to Dismiss (Doc. No. 15). The Court dismissed all claims asserted against Defendants James Kenney, Michael Nutter, Blanche Carney, and Michael Resnick. *See* June 14, 2017 Order (Doc. No. 20). As to Warden May, however, the Court found

2

that Mr. Andrews had sufficiently set forth allegations that could plausibly support a finding of personal involvement, and Mr. Andrews' § 1983 claim against Warden May survived. *See* June 14, 2017 Mem. (Doc. No. 19).

Mr. Andrews later requested leave to amend his complaint again to add a claim against all five original defendants for civil contempt, which the Court granted. *See* Mot. to Amend Compl. (Doc. No. 33); Feb. 20, 2018 Order (Doc. No. 34). With his civil contempt claim, Mr. Andrews alleged that the defendants had violated a class action settlement agreement regarding prison conditions. *See* Second Am. Compl. (Doc. No. 37). Following another motion to dismiss, the Court dismissed with prejudice the claims against Defendants James Kenney, Michael Nutter, Blanche Carney, and Michael Resnick. *See* July 30, 2018 Order n.1 (Doc. No. 43). Finding that Warden May had not moved to dismiss the civil contempt claim, the Court permitted the claim to proceed against him, expressing no view on its viability. *Id.*

Warden May now moves for summary judgment on both the § 1983 claim and the claim for civil contempt. Mr. Andrews opposes.

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere

3

suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). "Merely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Dawson v. Cook,* 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (quoting *Boykins v. Lucent Techs., Inc.,* 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## DISCUSSION

In his motion for summary judgment, Warden May argues that he is entitled to summary judgment on Mr. Andrews' § 1983 claim because Mr. Andrews (1) did not exhaust his administrative remedies before filing this lawsuit and (2) failed to demonstrate Warden May's

personal involvement in any alleged wrongdoing. As to the civil contempt claim, Warden May asserts that he is entitled to summary judgment because there is no supporting evidence in the record.

As explained in detail below, the Court grants Warden May's motion for summary judgment on the § 1983 claim because Mr. Andrews failed to exhaust his administrative remedies, but the Court denies his motion on the civil contempt claim because Mr. Andrews has set forth sufficient evidence to support a finding that Warden May disobeyed a valid court order.

## I. PLRA Exhaustion

The Prison Litigation Reform Act ("PLRA") commands that a prisoner cannot bring an action "with respect to prison conditions under section 1983 . . . or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[E]xhaustion in cases covered by § 1997e(a) is . . . mandatory." *Id.* at 524 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

The burden is on Warden May to prove that Mr. Andrews failed to exhaust his administrative remedies. *See Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013) ("The Court correctly placed the burden on Defendants to prove non-exhaustion."). The parties do not dispute that CFCF maintains a grievance system or that Mr. Andrews was aware of the system.[1] They do dispute, however, whether Mr. Andrews exhausted that system's available remedies.[2]

---

[1] Both Warden May and Mr. Andrews have submitted to the Court copies of the grievance policy and procedures. *See* Mot. for Summ. J. Ex. A (Doc. No. 59-2); Resp. to Mot. for Summ. J. Ex. F (Doc. No. 60). Mr. Andrews also admitted he knew about the grievance system. *See* Mot. for Summ. J. Ex. F 20:20–22 (Doc. No. 59-7) ("Q. Were you aware of the grievance system at the prison? A. Yes.").

[2] "[I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted." *Small*, 728 F.3d at 270 (citing *Bryant v. Rich*, 530 F.3d 1368, 1373–74 (11th Cir. 2008)).

Warden May first asserts that Mr. Andrews never filed a grievance related to his complaints of triple-celling. In support, Warden May points to the Philadelphia Prison System's electronic records, which purport to list all grievances filed by Mr. Andrews since he was admitted to CFCF in 2015. *See* Mot. for Summ. J. Ex. B (Doc. No. 59-3). According to these records, Mr. Andrews filed only four grievances while incarcerated: (1) a 2015 grievance claiming that items were missing from his commissary; (2) a 2015 grievance claiming a correctional officer denied him time out for recreation; (3) a 2016 grievance requesting to see a social worker; and (4) a 2016 grievance claiming that $7.00 was taken from his account without permission. *See id.* These are the only four grievances recorded in CFCF's official system, and none of them complains of triple-celling or its related conditions. Warden May argues that this proves Mr. Andrews failed to exhaust his administrative remedies by not first seeking redress through the grievance system.

Mr. Andrews responds that he filed three grievances complaining of his triple-celling and asking to be moved to a normal cell. In support, Mr. Andrews directs the Court to three completed grievance forms that he contends were properly submitted: (1) a March 27, 2016 grievance; (2) a June 10, 2016 grievance; and (3) a June 24, 2016 grievance. *See* Resp. to Mot. for Summ. J. Exs. A–C (Doc. No. 60). All three complain of his confinement to a triple cell. *Id.*

Warden May contends that even if Mr. Andrews did file these grievances, he still failed to exhaust his administrative remedies by never appealing them. In opposition, Mr. Andrews asserts that he could not start the appeal process because he never received a response to any of his grievances.

Mr. Andrews' argument, however, is contradicted by his own briefing as well as his deposition testimony. Mr. Andrews alleges he submitted his first grievance about triple-celling to CFCF on March 27, 2016. *See* Resp. to Mot. for Summ. J. Ex. A (Doc. No. 60). He then received

6

"an unprofessional inappropriat[e] verbal response" from Lieutenant Lynn and Sergeant Roney to this grievance "[a] few days later." Resp. to Mot. for Summ. J. 2 (Doc. No. 60). Consistent with this recitation of events, Mr. Andrews testified during his deposition as follows:

> Q. Were any of your grievances ever responded to?
> A. One was.
> Q. And which one was that?
> A. It was for [constant lockdowns, the three-man cell].
> Q. Okay. Who responded?
> A. I had a hearing with Lieutenant Lynn and Sergeant Roney.
> Q. And what happened at that hearing?
> A. I gave my grievance towards them about being in the cell constantly locked down, sleeping on the floor next to the toilet. And they basically just told me to go back to my block and deal with it.
> Q. Did they say anything else?
> A. I should've never came to jail.

Mot. for Summ. J. Ex. F 21:21–22:14 (Doc. No. 59-7).

CFCF's grievance procedures contemplate that a verbal hearing can be an appropriate response to an inmate's grievance. *See* Mot. for Summ. J. Ex. A at 1 (Doc. No. 59-2) (defining "Informal Resolution" as "[a] grievance resolved through face-to-face communication or note or letter and therefore would not have to be resolved by means of a formal written grievance response"). Having received a response to his grievance, Mr. Andrews was entitled to appeal. *See id.* at 3 ("The grievant shall have a right of appeal at every level of authority . . . ."), 10 ("Any inmate who is not satisfied with the decision of his/her grievance may file an Inmate Grievance Appeal form . . . .").

With an appeal available to him, Mr. Andrews was required to avail himself of that opportunity to exhaust his administrative remedies. *See Ramos v. Smith*, 187 F. App'x 152, 154 (3d Cir. 2006) (finding prisoner failed to exhaust where "the administrative process set[] forth a procedure for him to appeal" and the prisoner did "not avail[] himself of this procedure"). It is uncontested, however, that Mr. Andrews never filed an appeal:

7

| | Q. | Did you ever appeal one of your grievances? |
|---|---|---|
| | A. | No. |
| | Q. | Were you aware that there was an appeal process for grievances? |
| | A. | No, I wasn't aware of that. |

Mot. for Summ. J. Ex. F 22:15–19 (Doc. No. 59-7).

The fact that Mr. Andrews may not have been aware of the appeal process does not excuse his failure to employ it. *See Stokes v. Wenerowicz*, No. CV 13-7093, 2017 WL 3226863, at *4 (E.D. Pa. July 31, 2017) ("[I]gnorance or confusion regarding the Pennsylvania DOC policies does not excuse failing to adhere to these requirements.") (citations and quotations omitted); *Miller v. Schuylkill Cty. Prison*, No. CV 07-0331, 2007 WL 3342766, at *1 (M.D. Pa. Nov. 9, 2007) ("While a prison's refusal to provide grievance forms in response to an inmate's request may excuse a failure to exhaust administrative remedies, an inmate's subjective lack of awareness regarding administrative remedies will not excuse compliance."). Here, "[t]here is no evidence that he was misled or prevented from complying" with CFCF's appeal procedures. *Stokes*, 2017 WL 3226863, at *4. Because Mr. Andrews did not appeal the response to his grievance before filing this lawsuit, the Court finds he failed to exhaust his administrative remedies as required by the PLRA.[3] This failure to exhaust cannot be cured,[4] and so the Court dismisses Mr. Andrews' § 1983 claim with prejudice.

---

[3] The Court notes that Mr. Andrews filed two additional grievances related to triple-celling, both of which Mr. Andrews contends went unanswered. However, even if the Court were to determine that these grievances were properly exhausted, it would not change the fact that he did not exhaust his administrative remedies as to his first grievance when he did not seek an appeal.

[4] In May 2017, Mr. Andrews was transferred from CFCF of the Philadelphia Prison System to SCI Huntingdon of the Pennsylvania Department of Corrections. Having been removed from the Philadelphia Prison System, Mr. Andrews can no longer avail himself of its administrative remedies. *See* Mot. for Summ. J. Ex. A at 3 (Doc. No. 59-2) ("If an inmate is released from PPS custody, he/she loses all standing to any internal administrative remedy under consideration.")

## II. Civil Contempt

"A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995) (citations and quotations omitted).

"[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. "Consequently, where the clear and convincing evidence standard applies, the trial judge at summary judgment must inquire whether the evidence presented is such that a jury applying that evidentiary standard could find only for one side." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 366 n.26 (3d Cir. 2018) (quoting *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 522 (3d Cir. 2004)). "Evidence is 'clear and convincing' when it 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *Jones v. Brown*, 425 F. App'x 93, 96 (3d Cir. 2011) (quoting *Matter of Jobes*, 529 A.2d 434, 441 (N.J. 1987)).

### A. That a Valid Court Order Existed

The parties agree that a valid court order existed, but there is ambiguity as to whether the relevant order is a 2011 settlement agreement, a 2016 settlement agreement, or both. The Court resolves this uncertainty before moving to the other two elements.

In 2011, the City of Philadelphia settled a class action lawsuit alleging constitutional violations stemming from the Philadelphia Prison System's practice of triple-celling. *See Williams v. City of Philadelphia*, No. CV 08-1979, 2011 WL 3471261, at *1 (E.D. Pa. Aug. 8, 2011). In

9

that agreement, the City agreed in part "to make reasonable efforts to reduce the triple-celling of inmates" and "to make reasonable efforts to minimize the use of lockdowns and to provide inmates with medical and social services during lockdowns." *Id.* at *2. At the fairness hearing, the City "noted that inmates would not spend more than 60 days in a triple cell and assured the Court that they were taking further steps to reduce the amount of time inmates are housed in triple cells, the goal being 30 days." *Id.*

That same settlement agreement preserved the plaintiffs' right to reopen the case, which they did in the fall of 2012. *Williams v. City of Philadelphia*, No. CV 08-1979, 2016 WL 3258377, at *1 (E.D. Pa. June 13, 2016). When the plaintiffs reopened the case, the settlement agreement was nullified. *See* 2011 Settlement Agreement ¶ IX (Case No. 08-1979, Doc. No. 87) ("In the event Plaintiffs reinstate the action, this Settlement Agreement shall have no further force or effect.").

In 2016, the plaintiffs and the City entered into a second settlement agreement. *See generally Williams*, 2016 WL 3258377. Unlike the first agreement, the 2016 settlement agreement excluded the two provisions that explicitly called for reasonable efforts to reduce triple celling. *Compare* 2011 Settlement Agreement ¶ II.B.2 (Case No. 08-1979, Doc. No. 87) (providing that defendants will "make reasonable efforts to continue to reduce triple celling of inmates"), ¶ II.B.5 (providing that defendants will "make reasonable efforts to eliminate triple celling at the [House of Corrections]") *with* 2016 Settlement Agreement (Case No. 08-1979, Doc. No. 141) (omitting these provisions). However, the 2016 settlement agreement still contained two provisions requiring the City to address conditions surrounding triple-celling:

- "The defendants will continue to make reasonable efforts to ensure that inmates in triple cells are provided with clean cells, adequate bedding, and access to adequate showers and toilets."

10

- "The defendants will make reasonable efforts to limit the use of triple celling for [Seriously Mentally Ill] inmates who exhibit behavior that poses a risk to themselves or others."

2016 Settlement Agreement ¶¶ II.B.4, II.B.5 (Case No. 08-1979, Doc. No. 141).

Further, like the 2011 settlement agreement, the 2016 agreement contained a provision regarding the use of lockdowns:

> The defendants will continue to make reasonable efforts to minimize the use of lockdowns and restricted movement and to provide inmates with medical services, mental health services, dental services, social services, legal visits, and exercise, during restrictive movement or lockdown periods so long as the activity does not present a security risk to the inmate, other inmates or correctional staff.

*Id.* at ¶ II.B.3.

Mr. Andrews argues that the City, and therefore Warden May, is bound by the promises it made in both the 2011 and 2016 agreements. *See* Resp. to Mot. for Summ. J. 4 (Doc. No. 60) ("Any settlement agreement after June 15, 2011 fairness hearing does not state or claim they will no longer abide by the '60 day triple cell for inmates' rule."). This is not so. Per the plain language of the 2011 settlement agreement, the City was relieved of any duty to perform under it when the plaintiffs reinstated the action in 2012. There is only one valid, relevant court order: the 2016 settlement agreement.

### B. *That the Defendant had Knowledge of the Order*

Warden May does not dispute having knowledge of the 2016 settlement agreement, so the Court may turn to the third element.

### C. *That the Defendant Disobeyed the Order*

Mr. Andrews alleges that Warden May violated the terms of the settlement agreement by keeping him in a triple cell for more than 60 days, subjecting him to unsanitary conditions, and imposing constant lockdowns.

11

As noted above, the 2016 settlement agreement superseded the 2011 settlement agreement and its associated fairness hearing. The 2016 agreement contains no terms about reducing the use of triple celling or limiting its use to any specific number of days per inmate. Therefore, Mr. Andrews' contention that he spent more than 60 days in a triple cell is not evidence of a violation of the settlement agreement. However, the 2016 settlement agreement does mandate the City to make reasonable efforts to reduce the use of lockdowns, provide exercise during lockdown periods if doing so will not present a security risk, and provide triple-celled inmates with clean cells. These points are worthy of further analysis.

Having examined the record for evidence relevant to Mr. Andrews' contentions, the Court identifies the follow excerpts from his three grievances complaining of triple-celling:

- "My bed is near the toilet exposing me an[d] my bed to urine and fecal matter."

- "I have been sleeping on the floor right next to the toilet for a couple of months now. . . . One of my cellmates peed on me in the middle of the night trying to use the toilet."

- "I'm force[d] to sleep on the floor next to the toilet."

- "The guards are not letting us out for recreation. This Pod is always lock down. I'm not feeling well being all coot up with no room to move."

- "This Pod is always lock down for whatever reason so we are not getting any recreation. The lock downs an[d] restricted movement inside the 3 man cell is causing me mental attacks. I have to stay on my bed cause it's no room to move, like a cat in a cage at the S.P.C.A. . . . Everyone on D2pod4 has put in grievances about the lock downs an[d] they still do it. This is my 3rd grievance about everything I have said. Nothing is being done . . . We even did a hunger strike because of the lock downs."

Resp. to Mot. for Summ. J. Exs. A–C (Doc No. 60).

Mr. Andrews' November 20, 2018 deposition testimony provides further evidence on the issue of lockdowns:

12

| | |
|---|---|
| Q. | You mentioned that your anxiety attacks happened during lockdowns. So when would the prison be locked down? |
| A. | On a constant basis. |
| Q. | What does a lockdown mean? |
| A. | You stay in the cell all day long. |
| Q. | When you say it happens on a constant basis, would it happen once a week? |
| A. | Way more than that. |
| Q. | So a couple times a week? |
| A. | A couple times a week. |
| Q. | Do you know why the prison would be on lockdown. Would you be given a reason? |
| A. | I guess short staff. |
| Q. | And the lockdown would last all day long? |
| A. | All day long. |

Mot. for Summ. J. Ex. F 20:4–19 (Doc. No. 59-7).

In his motion for summary judgment, Warden May argues that the record contains no evidence, "let alone clear and convincing evidence," that he "failed to make reasonable efforts to reduce triple celling." Mot. for Summ. J. 13 (Doc. No. 59). He further asserts that Mr. Andrews failed to demonstrate his "personal involvement, actions or omissions with regards to triple cells in the PDP." *Id.* The Court disagrees.

First, all of Warden May's arguments center on the issue of triple-celling. However, both the 2016 settlement agreement and Mr. Andrews' civil contempt claim address lockdowns as well. Warden May has effectively left these contentions unchallenged.

Second, there is evidence in the record from which a reasonable fact finder could determine Warden May's awareness of and involvement in the conditions at CFCF. CFCF's grievance procedure provides that a Level I review of an inmate's grievance will typically include review by the Warden:

> The Warden will review the recommended action of the Deputy Warden and approve, deny, or modify the Deputy Warden's recommended action within fourteen (14) days of receipt of the decision of the Deputy Warden by noting his or her decision (along with the reasons in the case of a denial or modification) on the Finding of Inmate Grievance Form and shall forward signed copies to the inmate.

Mot. for Summ. J. Ex. A at 7 (Doc. No. 59-2). Mr. Andrews' third grievance states that "[e]veryone on D2pod4 has put in grievances about the lock downs," a piece of evidence that Warden May has not disputed, and the Court must accept as true at this stage. A reasonable fact finder could conclude that through the proper workings of CFCF's grievance procedure, Warden May would have been informed at least of the grievances related to lockdowns.

That same reasonable fact finder, being able to determine that Warden May was aware of the conditions, could also then determine that his failure to remedy these conditions—which were severe enough to inspire inmate hunger strikes, prompt pod-wide grievance filings, and give Mr. Andrews anxiety attacks—constituted a violation of the 2016 settlement agreement's terms to make reasonable efforts to reduce the use of lockdowns. This is so even under the "clear and convincing" standard accompanying a claim for civil contempt.

In performing this analysis, the Court notes its duty to take no part in "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as those "are jury functions." *Anderson*, 477 U.S. at 255. It further heeds the Supreme Court's guidance that grants of summary judgment should be made "with caution," and that a trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id.* Applying such caution here, the Court cannot grant summary judgment on the record before it. Therefore, the Court denies Warden May's motion for summary judgment on Mr. Andrews' civil contempt claim.

## Conclusion

For the foregoing reasons, Warden May's motion for summary judgment is granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE